IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| FEDEX TRADE NETWORKS TRANSPORT & BROKERAGE, INC., | ) ) ) ) |
| Plaintiff, | ) ) Civil Action No. 22-cv-01313-LKG |
| v. | ) ) Dated: April 20, 2023 |
| AIRBOSS DEFENSE GROUP, LLC, | ) ) ) |
| Third-Party Plaintiff, | ) ) |
| v. | ) ) |
| MCWILLIAMS COLLECTIVE, LLC, *et al.*, | ) ) ) ) |
| Third-Party Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

In this civil action, Plaintiff, FedEx Trade Networks Transport & Brokerage Inc. ("FTN"), alleges that Airboss Defense Group, LLC ("ADG") failed and refused to pay the freight, detention, demurrage and other fees related to the shipment and detention of certain containers of nitrile rubber gloves. ECF No. 1. ADG has also brought claims for express indemnification, equitable indemnification and contribution against third-party Defendant McWilliams Collective, LLC ("McWilliams") related to the shipment and detention of these goods. ECF No. 10. McWilliams also asserts counterclaims for breach of contract, express indemnification and declaratory judgment against ADG related to the shipment and detention of the goods. ECF No. 23.

McWilliams has moved for a transfer of venue to the United States District Court for the Southern District of Indiana, pursuant to 28 U.S.C. § 1404(a), with regards to the claims in this matter between McWilliams and ADG. *See generally* ECF No. 37. ADG and FTN oppose

McWilliams' motion to transfer venue and this motion is fully briefed. ECF Nos. 37, 40, 43 and 45. No hearing is necessary to resolve the motion. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, the Court **DENIES** McWilliams' motion to transfer venue.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.   Factual Background

Plaintiff FTN alleges in this civil action that ADG failed and refused to pay certain freight, detention, demurrage and other accrued fees related to the shipment and detention of certain containers of nitrile rubber gloves in 2021. ECF No. 1. As relief, FTN seeks to recover outstanding ocean freight, insurance charges, accrued storage, demurrage and other charges, attorneys' fees and other costs from Defendants. *Id.* at ¶¶ 18-19.

The Parties And Claims

FTN is a non-vessel operating common carrier and ocean freight forwarder that provides ocean transportation under its tariffs, rate agreements and bills of lading. *Id.* at ¶ 1. Third-party Plaintiff ADG is a survivability company that is a Delaware corporation with its principal place of business in Jessup, Maryland. ECF No. 10 at ¶¶ 5, 8.

Third-party Defendant McWilliams is a Florida limited liability company with its principal place of business in St. Augustine, Florida. *Id.* at ¶ 6. Third-party Defendant Nathan Trading is a Thailand-based seller of nitrile rubber gloves. *Id.* at ¶ 13.

In the complaint, FTN asserts claims against ADG for: (1) breach of the FTN bill of lading; (2) account stated; (3) quantum meruit; and (4) declaratory judgment. *See generally* ECF No. 1. In response, ADG alleges that third-party Defendants McWilliams and Nathan Trading are legally responsible for the damages alleged by FTN. ECF No. 10. And so, ADG asserts third-party claims for express indemnification, equitable indemnification and contribution against McWilliams and Nathan Trading. *See generally id.* In addition, McWilliams asserts

---

[1] The facts recited in this memorandum opinion and order are taken from the complaint, ADG's third-party complaint; and McWilliams' motion to transfer venue and memorandum in support thereof. ECF Nos. 1, 10, and 37.

counterclaims for breach of contract, express indemnification and declaratory judgment against ADG.  ECF No. 23.

The Transportation Management Agreement

As background, on May 7, 2021, ADG entered into a transportation management agreement (the "TMA") with McWilliams, pursuant to which McWilliams "agreed to arrange the ocean transportation, customs brokerage, domestic transloading, and interstate trucking of the [nitrile rubber] gloves."  ECF No. 10 at ¶ 15.  Relevant to the pending motion to transfer venue, the TMA contains a governing law and venue provision, which provides, in relevant part, that:

> This Agreement shall be deemed to have been drawn in accordance with the statutes and laws of the state of Indiana. In the event of any disagreement or dispute, the laws of Indiana shall apply. All such disagreements or disputes shall be submitted to the court of proper jurisdiction in the state of Indiana and the Parties hereby agree to the exclusive jurisdiction of the courts located in the state of Indiana, and further waives any defenses or challenges to the venue or jurisdiction in or of such courts. . . .

ECF No. 37-3 at 10.

FTN alleges that, on November 4, 2021, the United States government issued a withhold release order directing the detention of disposable gloves produced in Malaysia over concerns of forced labor in the manufacturing of the gloves.  ECF No. 1 at ¶ 8; *see also* ECF No. 10 at ¶¶ 18, 33.  And so, FTN alleges that the 202 containers containing ADG's rubber gloves could not be released from the port.  ECF No. 1 at ¶ 8.

FTN alleges that it has accrued demurrage, detention and related storage charges and costs due to the detention of ADG's rubber gloves, and that ADG is liable for these outstanding charges.  *Id.* at ¶¶ 8, 14.  And so, FTN seeks to recover: (1) the outstanding and unpaid ocean freight and insurance charges in the amount of $15,387,550; (2) accrued storage, demurrage and other charges in the amount of $11,385,518; (3) interest and (4) other costs and attorneys' fees.  *Id.* at ¶¶ 18-19.

### B. Relevant Procedural Background

FTN commenced this action on June 1, 2022. ECF No. 1. On July 20, 2022, ADG filed a third-party complaint against McWilliams and Nathan Trading.[2] ECF No. 10.

On September 15, 2022, McWilliams answered the complaints filed by FTN and ADG and asserted counterclaims against ADG. *See* ECF Nos. 23, 24.

On December 12, 2022, McWilliams filed a motion to transfer venue. ECF No. 37. On January 4, 2023, FTN and ADG filed their respective responses in opposition to McWilliams' motion to transfer venue. ECF Nos. 40, 43. On January 18, 2023, McWilliams filed a reply brief. ECF No. 45.

The motion to transfer venue having been fully briefed, the Court resolves the pending motion.

## III. LEGAL STANDARDS

### A. Transfer Of Venue And Forum-Selection Clauses

Title 28, United States Code, Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). This Court has recognized that Section 1404(a) "was intended to enlarge the common law power of the court under the well-established doctrine of *forum non conveniens* and was enacted to prevent the waste of time, energy and money as well as to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002) (quoting *Dicken v. United States*, 862 F. Supp. 91, 92 (D. Md. 1994)).

A district court has great discretion in determining whether to transfer a case under Section 1404(a), and the decision to transfer venue is made according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). To that end, the Court considers several factors, including: "(1) the weight

---

[2] On August 25, 2022, the parties stipulated to the dismissal of ADG as a defendant in this action. ECF No. 20.

accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015); *see also Weathersby-Bell v. Wash. Metro. Area Transit Auth.*, No. GJH-19-3474, 2020 WL 4501485, at *2 (D. Md. Aug. 4, 2020).

Generally, a plaintiff's "choice of venue is entitled to substantial weight in determining whether transfer is appropriate." *McCumber v. Invitation Homes, Inc.*, No. 21-CV-00123-LKG, 2021 WL 4124249, at *2 (D. Md. Sept. 9, 2021) (citing *Plumbing Servs., Inc.*, 791 F.3d at 444) (citation omitted); *see also Mamani v. Bustamante*, 547 F. Supp. 2d 465, 469 (D. Md. 2008) (holding that "unless the balance of factors 'is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'") (quoting *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984)). But, the calculus changes where an agreement between the parties includes a valid forum-selection clause, which "represents the parties' agreement as to the most proper forum." *Atl. Marine Constr. Co. v. U.S. D. for W.D. of Tex.*, 571 U.S. 49, 63 (2013) (quoting *Stewart Org.*, 487 U.S. at 31) (holding that, because forum-selection clauses are "bargained for by the parties," "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases."). And so, courts generally enforce forum-selection clauses, unless it would be unreasonable to do so. *BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 470 (4th Cir. 2018), as amended (Mar. 27, 2018) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

This presumption of enforceability applies if the forum selection clause is mandatory. *Id.* (citing *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650–51 (4th Cir. 2010)). In this regard, the United States Court of Appeals for the Fourth Circuit has held that a mandatory forum-selection clause requires that litigation to occur in a specified forum; while a permissive forum-selection clause permits the litigation to occur in a specified forum, but does not bar litigation elsewhere. *Id.*

The analysis under Section 1404(a) also "presupposes a contractually valid forum-selection clause." *Versus Evil LLC v. PNC Bank, Nat'l Ass'n*, 613 F. Supp. 3d 916, 922 (D. Md. 2020) (quoting *Atl. Marine*, 571 U.S. at 62 n.5). Given this, the Court must also determine whether a forum-selection clause is "contractually valid." *Id.* (quoting *Sears Contract, Inc. v. Sauer Inc.*, 378 F. Supp. 3d 435, 440 (E.D.N.C. 2019)) (citations omitted). The Supreme Court

has held that, if a forum-selection clause is valid, courts should apply a strong presumption in favor of the forum-selection clause and enforce the forum-selection clause, absent "extraordinary circumstances unrelated to the convenience of the parties." *Atl. Marine*, 571 U.S. at 62.

The Supreme Court and the Fourth Circuit have not specifically addressed the type of "extraordinary circumstances" that may arise in the context of multi-party litigation for which the forum-selection clause reaches some, but not all, of the parties and claims. *Artech Info. Sys., LLC v. ProTek Consulting*, 2018 WL 3575054, at *2 (D. Md. July 25, 2018); *see also Waterman v. Thor Motor Coach, Inc.*, No. 3:19-CV-890, 2020 WL 1290595, at *2 (E.D. Va. Mar. 18, 2020). But, the Third and the Fifth Circuits have considered this question and held that, "in situations where some but not all parties have entered into a forum-selection clause," courts must determine whether a transfer of venue is warranted by assessing the following factors: (1) that the claims bound by the forum-selection clause should be litigated in the chosen forum in "all but the most unusual cases;" (2) the private and public interests of the parties not bound by the forum-selection clause; (3) the practical threshold issues of jurisdiction and severance; (4) judicial efficiency and "any other public interests that weigh against enforcing a forum-selection clause." *Artech*, 2018 WL 3575054, at *3 (citing *In re Rolls Royce Corp.*, 775 F.3d 671, 681 (5th Cir. 2014), *cert. denied*, 136 S.Ct. 45 (5th Cir. 2015) and *In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 404-05 (3d Cir. 2017), *cert. denied*, 128 S.Ct. 1288 (2018).

IV.   **LEGAL ANALYSIS**

McWilliams has moved to transfer the claims in this action between McWilliams and ADG to the United States District Court for the Southern District of Indiana, upon the ground that McWilliams and ADG are parties to a mandatory forum-selection clause that is set forth in their transportation management agreement. ECF No. 37.

ADG and FTN do not dispute that McWilliams and ADG have entered into a valid forum-selection agreement. *See* ECF No. 40 at 7; ECF No. 43 at 6. But, ADG and FTN oppose McWilliams' motion to transfer of venue, because: (1) neither FTN nor Nathan Trading are parties to the TMA and its forum-selection clause and (2) the private and public interests, practical threshold issues of jurisdiction and severance, judicial economy and the public interest weigh heavily against severing and transferring the claims between ADG and McWilliams to another district. *See* ECF Nos. 40, 43.

For the reasons that follow, a careful reading of the pleadings and the TMA shows that the factors that the Court weighs when considering a motion to transfer venue weigh against transferring the claims between McWilliams and ADG to another forum.  And so, the Court DENIES McWilliams' motion to transfer venue.

### A.  A Transfer Of Venue Is Not Warranted

McWilliams has not met its burden to show that a transfer of venue for the claims between McWilliams and ADG is warranted under Section 1404(a).  And so, for the reasons discussed below, the Court DENIES McWilliams' motion to transfer venue.

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).  The Supreme Court has held that, if a forum-selection clause is valid, courts should apply a strong presumption in favor of the forum-selection clause and enforce the forum-selection clause, absent "extraordinary circumstances unrelated to the convenience of the parties."  *Atl. Marine*, 571 U.S. at 62.

The Supreme Court and the Fourth Circuit have not specifically addressed the type of "extraordinary circumstances" that may arise in the context of multi-party litigation for which the forum-selection clause reaches some, but not all of, the parties and claims.  *Artech Info. Sys., LLC v. ProTek Consulting*, 2018 WL 3575054, at *2 (D. Md. July 25, 2018); *see also Waterman v. Thor Motor Coach, Inc.*, No. 3:19-CV-890, 2020 WL 1290595, at *2 (E.D. Va. Mar. 18, 2020).  But, this Court, and the Third and the Fifth Circuit,s have previously considered this question and held that, "in situations where some but not all parties have entered into a forum-selection clause," courts must determine whether a transfer of venue is warranted by assessing the following factors: (1) that the claims bound by the forum-selection clause should be litigated in the chosen forum in "all but the most unusual cases;" (2) the private and public interests of the parties not bound by the forum-selection clause; (3) the practical threshold issues of jurisdiction and severance; and (4) judicial efficiency and "any other public interests that weigh against enforcing a forum-selection clause."  *Artech*, 2018 WL 3575054, at *3 (citing *In re Rolls Royce Corp.*, 775 F.3d 671, 681 (5th Cir. 2014), *cert denied*, 136 S.Ct. 45 (5th Cir. 2015) and *In re:*

*Howmedica Osteonics Corp.*, 867 F.3d 390, 404-05 (3d. Cir. 2017), *cert denied*, 128 S.Ct. 1288 (2018). These factors weigh against a transfer of venue in this case for several reasons.

First, as McWilliams correctly observes, there is a presumption that the claims in this litigation that are bound by the forum-selection clause in the TMA should be litigated in the chosen forum. The parties agree that the TMA contains a contractually valid mandatory forum-selection clause that requires that claims between McWilliams and ADG be brought in the State of Indiana. *See* ECF No. 40 at 7; ECF No. 43 at 6; ECF No. 45 at 10. This forum-selection clause provides, in relevant part, that:

> This Agreement shall be deemed to have been drawn in accordance with the statutes and laws of the state of Indiana. In the event of any disagreement or dispute, the laws of Indiana shall apply. *All such disagreements or disputes shall be submitted to the court of proper jurisdiction in the state of Indiana and the Parties hereby agree to the exclusive jurisdiction of the courts located in the state of Indiana*, and further waives any defenses or challenges to the venue or jurisdiction in or of such courts. . . .

ECF No. 37-3 at 10 (emphasis supplied). And so, the Court reads the forum-selection clause to mandate that all disagreements or disputes between ADG and McWilliams related to the TMA be brought in Indiana.

Nonetheless, ADG and FTN persuasively argue that the Court need not afford substantial weight to this forum-selection provision in resolving McWilliams' motion to transfer in this case, because not all parties to this action are parties to that agreement. *See* ECF No. 40 at 4-5; ECF No. 43 at 4-6. As the Fifth Circuit has observed:

> A properly conducted section 1404 inquiry may well require a district court to send different parties to pursue the same suit in different districts, implicating concerns attending parallel lawsuits not present in *Atlantic Marine*. While *Atlantic Marine* noted that public factors, standing alone, were unlikely to defeat a transfer motion, the Supreme Court has also noted that section 1404 was designed to minimize the waste of judicial resources of parallel litigation of a dispute. The tension between these centrifugal considerations suggests that the need—rooted in the valued public interest in judicial economy—to pursue the same claims in a single action in a single court can trump a forum-selection clause.

*Rolls Royce*, 775 F.3d at 679; *see also Artech*, 2018 WL 3575054, at *2 (The Supreme Court did not "provide further guidance regarding extraordinary circumstances that may arise in the

8

context of multi-party litigation for which the clause in question reaches some but not all of the parties and claims."). And so here, the interest in pursuing the same and related claims in a single action, before the same court, can eclipse a valid forum-selection clause.

There is no dispute that this litigation involves multiple parties and claims, and that only some of the parties and claims in this action are governed by the forum-selection clause in the TMA. Notably, FTN asserts claims for, (1) breach of the FTN bill of lading; (2) account stated; (3) quantum meruit; and (4) declaratory judgment that are not covered by the forum-selection clause in the TMA, because FTN is not a party to that agreement. *See generally* ECF No. 1. ADG also asserts claims for express indemnification, equitable indemnification and contribution against Nathan Trading that are not governed by the forum-selection clause, because Nathan Trading is not a party to that agreement. *See generally* ECF No. 10. These claims and the claims between McWilliams and ADG arise from the same shipment and detention of ADG's nitrile rubber gloves. *See generally* ECF Nos. 1, 10, 23, and 24. Given this, there is a strong interest in this case for pursuing all of these related claims in a single action, that overcomes the forum-selection clause in the TMA.

The private interests of FTN and Nathan Trading, who are not parties to the TMA, also weigh against a transfer of venue in this case. The private interests that the Court considers under this factor include: "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Artech*, 2018 WL 3575054, at *3 (quoting *Atl. Marine*, 571 U.S. at 62 n.6).

Here, it is undisputed that none of the parties to this action have a connection to the State of Indiana. *See* ECF No. 40 at 8; ECF No. 43 at 7; ECF No. 45 at 11. Notably, FTN's principal place of business is in Tennessee. ECF No. 1 at ¶ 1. Nathan Trading is located in Thailand. ECF No. 10 at ¶ 13. ADG's principal place of business is in Maryland and McWilliams's principal place of business is in Florida. ECF No. 10 at ¶¶ 5, 6.

There is also no dispute that none of the events giving rise to this litigation occurred in Indiana. *See* ECF No. 40 at 8; ECF No. 43 at 9; ECF No. 45 at 14. All claims in this case involve the same shipment and detention of ADG's nitrile rubber gloves in 2021. ECF Nos. 1,

9

10 and 23. Given this, the witnesses, documents and other evidence relevant to this case are not located in Indiana. And so, the interests of FTN and ADG in the relative ease or access to sources of proof, cost of obtaining the attendance of witnesses and other factors that would also impact the trial of the case would be negatively impacted by a transfer of the claims at issue to the Southern District of Indiana.

ADG also argues with persuasion that the public interest is best served by denying McWilliams' motion to transfer venue, because Maryland maintains a greater interest in litigating this case than Indiana and this judicial district is significantly less congested than the Southern District of Indiana. ECF No. 43 at 8-9. ADG, which is the owner of the nitrile rubber gloves at issue in this case, has its principal place of business in Maryland. ECF No. 10 at ¶ 5. And so, the Court agrees with FTN and ADG that the private and public interests at stake in this case are best served here by not transferring the claims between ADG and McWilliams to the Southern District of Indiana.

The third factor that the Court considers—practical threshold issues of jurisdiction and severance—is not a significant factor in this case. If the Court grants McWilliams' motion to transfer, severance of the claims between ADG and McWilliams from the rest of the claims in this case will be necessary, because the Southern District of Indiana would not possess personal jurisdiction over FTN and Nathan Trading. But, such severance would also be permissible, because FTN could obtain complete relief directly against McWilliams in this action without resolving the issue before the Southern District of Indiana, *i.e.*, whether either McWilliams or ADG must defend and indemnify the other against FTN's claims. ECF No. 43 at 9-10; ECF No. 45 at 17. And so, this factor does not weigh for or against a transfer of venue.

But, judicial efficiency and the public interest does clearly weigh against transferring this matter to the Southern District of Indiana, because such a transfer would result in duplicative litigation. *See Artech*, 2018 WL 3575054, at *4 (holding that, at this stage of the analysis, the Court "exercises its discretion . . . in choosing the most appropriate course of action . . . consider[ing] efficiency interests in avoiding duplicative litigation[.]"). As discussed above, all claims and counterclaims in this action arise from the same shipment and detention of ADG's rubber gloves in 2021. ECF Nos. 1, 10 and 23. Given this, there will likely be substantial overlap of the evidence and witnesses required to establish the respective claims and

counterclaims in this case.

As this Court has recognized, "[t]o permit a situation in which two cases involving the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy, and money that § 1404(a) was designed to prevent." *Artech*, 2018 WL 3575054, at *4. And so, the Court agrees with FTN and ADG that judicial efficiency and the public interest weigh against transferring the claims between ADG and McWilliams to the Southern District of Indiana.

## V. CONCLUSION

In sum, McWilliams has not met its burden to show that a transfer of ADG's third-party complaint against McWilliams and McWilliams' counterclaims against ADG to the Unites States District Court for the Southern District of Indiana is warranted. And so, for the foregoing reasons, the Court **DENIES** McWilliams' motion to transfer venue.

The parties shall **FILE** a joint status report stating their respective views on how this matter should proceed **on or before May 20, 2023**.

**IT IS SO ORDERED.**

                                                                                s/Lydia Kay Griggsby
                                                                                LYDIA KAY GRIGGSBY
                                                                                United States District Judge