**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| FEDEX TRADE NETWORKS TRANSPORT & BROKERAGE, INC., ) ) ) | |
| Plaintiff, ) ) | Civil Action No. 22-cv-01313-LKG (LEAD) |
| v. ) ) | |
| AIRBOSS DEFENSE GROUP, LLC, ) ) | |
| Third-Party Plaintiff, ) ) | |
| v. ) ) | |
| MCWILLIAMS COLLECTIVE, LLC, ) ) | |
| Third-Party Defendant. ) ) | |

| | |
|---|---|
| AIRBOSS DEFENSE GROUP, LLC, ) ) | |
| Plaintiff, ) ) | Civil Action No. 23-cv-01253-LKG |
| v. ) ) | Dated:  April 4, 2024 |
| MCWILLIAMS COLLECTIVE, LLC, *et al.* ) ) ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

## I.     INTRODUCTION

This consolidated civil action involves claims and counterclaims arising from certain agreements by and among FedEx Trade Networks Transport & Brokerage, Inc. ("FTN"), Airboss Defense Group ("ADG"), McWilliams Collective, LLC and its sole member, Defendant Eric L. McWilliams (collectively, "McWilliams Collective"), and others, related to two shipments of nitrile rubber gloves intended to be sent to the United States during the coronavirus pandemic.

ECF Nos. 10 and 23; ECF No. 15 (23-cv-1253).  Relevant to this memorandum opinion, ADG asserts claims against McWilliams Collective for breach of contract, conversion, declaratory relief and unlawful brokerage activity, related to the shipment of certain nitrile rubber gloves. ECF No. 15 (23-cv-1253).  McWilliams Collective also asserts counterclaims against ADG for breach of contract, express indemnification and declaratory judgment related to the shipment of certain nitrile rubber gloves.  ECF No. 23.

McWilliams Collective has moved to dismiss ADG's claims, pursuant to Fed R. Civ. P. 12(b)(6).  ECF No. 52.  ADG has also moved to dismiss McWilliams Collective's counterclaims, pursuant to Fed. R. Civ. P. 12(b)(6).  ECF No. 53.  These motions are fully briefed.  ECF Nos. 57, 58, 60, 62.  No hearing is necessary to resolve the motions.  *See* Local Rule 105.6 (D. Md. 2023).  For the reasons that follow, the Court: (1) **GRANTS-in-PART** and **DENIES-in-PART** McWilliams Collective's motion to dismiss; (2) **DISMISSES** ADG's breach of contract claim WITHOUT PREJUDICE; (3) **DISMISSES** ADG's declaratory relief claim; (4) **GRANTS** ADG's motion to dismiss; (5) **DISMISSES** McWilliams Collective's breach of contract counterclaim WITHOUT PREJUDICE;  (6) **DISMISSES** McWilliams Collective's express indemnification counterclaim; and (7) **DISMISSES** McWilliams Collective's declaratory judgment counterclaim.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

In this consolidated civil action, ADG and McWilliams Collective assert claims and counterclaims arising from certain agreements between these two parties related to two shipments of nitrile rubber gloves to the United States during the coronavirus pandemic.  ECF No. 23; ECF No. 15 (23-cv-1253).

In ADG's complaint (the "ADG Complaint"), ADG asserts claims against McWilliams Collective for breach of contract (Count I); conversion (Count II); declaratory relief (Count III);

---

[1] The facts recited in this memorandum opinion are taken from FTN's complaint; ADG's third-party complaint; McWilliams Collective's answer and counterclaim to ADG's third-party complaint; ADG's motion to dismiss; McWilliams Collective's motion to dismiss; and ADG's complaint in the transferred and consolidated case.  ECF Nos. 1, 10, 23, 52, 53 (22-cv-1313), and 15 (23-cv-1253).

and unlawful brokerage activity (Count IV) related to the shipment of certain nitrile rubber gloves, which were intended to replace nitrile rubber gloves that were previously detained by the United States Government on November 4, 2021 (the "Replacement Gloves").  ECF No. 15 (23-cv-1253).  As relief, ADG seeks to recover monetary damages from McWilliams Collective, declaratory relief and certain costs and fees.  *Id*. at 8-9.

In its answer and counterclaim to ADG's third-party complaint in this matter (ECF No. 10), McWilliams Collective asserts counterclaims against ADG for breach of contract (Count I); express indemnification (Count II); and declaratory judgment (Count III) related to the original shipment of the nitrile rubber gloves, that were detained by the United States Government on November 4, 2021 (the "Original Gloves").  ECF No. 23.  As relief, McWilliams Collective seeks to recover monetary damages from ADG, a declaratory judgment, costs and attorney's fees.[2]  *Id.* at ¶ 85.

The Parties

FedEx Trade Network ("FTN") is a non-vessel operating common carrier and ocean freight forwarder that provides ocean transportation under its tariffs, rate agreements and bills of lading.  ECF No. 1 ¶ 1.

ADG is a survivability company that is a Delaware corporation, with its principal place of business located in Jessup, Maryland.  ECF No. 10 ¶¶ 5, 8; ECF No. 15 ¶ 1 (23-cv-1253).

McWilliams Collective is a Florida limited liability company, with its principal place of business located in St. Augustine, Florida.  ECF No. 10 ¶ 6; ECF No. 15 ¶ 2 (23-cv-1253).

Defendant Eric L. McWilliams is the sole member of McWilliams Collective, LLC, and a resident of Florida.  ECF No. 15 ¶ 2 (23-cv-1253).

---

[2] Plaintiff FTN alleged in this matter that ADG breached certain bills of lading by failing and refusing to pay the freight, detention, demurrage, and other accrued fees related to the two shipments of the nitrile rubber gloves.  *See* ECF No. 1.  ADG contends that McWilliams Collective is legally responsible for the damages alleged by FTN.  ECF No. 10 at 1-2.  And so, ADG seeks to obtain judgment against McWilliams Collective in favor of FTN, pursuant to Fed. R. Civ. P. 14(c).  *Id.* at Prayer for Relief.

The Shipment Of The Original Gloves

As background, in March 2021, ADG entered into a contract with the United States Department of Health and Human Services ("HHS") to supply HHS with shipments of nitrile rubber gloves.  ECF No. 10 ¶ 12.  And so, on May 7, 2021, ADG entered into a transportation management agreement (the "TMA") with McWilliams Collective, pursuant to which McWilliams Collective "agreed to arrange the ocean transportation, customs brokerage, domestic transloading, and interstate trucking of the [nitrile rubber] gloves," by contracting with certain service providers.  ECF No. 10 ¶ 15.

On November 4, 2021, the United States Government issued a withhold release order directing the detention of disposable gloves produced in Malaysia, due to concerns about the use of forced labor during the manufacturing of the gloves.  ECF No. 1 ¶ 8; ECF No. 10 ¶¶ 18, 33; ECF No. 23 ¶ 62.  And so, 202 containers containing the Original Gloves were detained by the United States Government.  ECF No. 1 ¶ 8; ECF No. 10 ¶¶ 17-20; ECF No. 23 ¶ 62.

The Shipment Of The Replacement Gloves

Because the United States Government detained the Original Gloves, a Thailand-based seller agreed to sell the Replacement Gloves to ADG.  ECF No. 15 (23-cv-1253) ¶¶ 4, 16.  And so, ADG alleges that in January 2022, it entered into a "partially oral and partially in writing" agreement with McWilliams Collective "to arrange the ocean transportation, customs, brokerage, domestic transloading, and interstate trucking of the Replacement [Gloves] to ADG's warehouse located in Kansas City, Missouri."  *Id.* ¶ 17.  In this regard, ADG also alleges that McWilliams Collective arranged for "unknown ocean common carriers, warehouses, and motor carriers to provide services" to transport the Replacement Gloves, and arranged for a customs broker to file the customs entries of the Replacement Gloves to reflect that McWilliams Collective was the importer of record, pursuant to this agreement.  *Id.* ¶¶ 18-19.

The TMA

The parties agree that they have entered into a transportation management agreement related to the shipment of the Original Gloves (the "TMA").  *See* ECF No. 23 ¶¶ 62-64; 73; ECF No. 53-1 at 5, 8.  The TMA contains several provisions that are relevant to this dispute.

4

First, Section 1.3 of the TMA, which is entitled "Compliance with Applicable Law," provides that:

> Each party represents and warrants that it will comply in all material respects with all applicable laws and regulations in connection with the Services rendered hereunder.

TMA, ECF No. 53-2 at 2.

The TMA also contains several indemnification provisions that are relevant to this dispute. Specifically, Section 4.1.1 of the TMA, which is entitled "Mutual Indemnity," provides that:

> Customer agrees to indemnify, save harmless, and defend Contractor and its affiliated entities under common controlling ownership from and against any and all direct or indirect claims, loss, damage, injury, demands, expenses (including reasonable attorney fees and expenses and expert witness fees and expenses), liabilities, fines, penalties, judgments, losses and other obligations (collectively, the "Claims") to the extent directly and proximately caused by or arising from: (a) the negligence or other wrongful acts or omissions of Customer; (b) Customer's breach of this Agreement; or (c) Customer's violation of any applicable law, rule or regulation. Customer shall further indemnify, save harmless and defend Contractor from any Claims arising from or related to employment status or employment related benefits (including, but not limited to, overtime, worker's compensation, unemployment, state wage and hour, minimum wage) which Claims are made by Customer's employees.

*Id.* at 4-5. Section 4.1.2 of the TMA, which is entitled "Mutual Indemnity," also provides that:

> Contractor agrees to indemnify, save harmless, and defend Contractor and its affiliated entities under common controlling ownership from and against any and all direct or indirect claims, loss, damage, injury, demands, expenses (including reasonable attorney fees and expenses and expert witness fees and expenses), liabilities, fines, penalties, judgments, losses and other obligations (collectively, the "Claims") to the extent directly and proximately caused by or arising from: (a) the negligence or other wrongful acts or omissions of Contractor; (b) Contractor's breach of this Agreement; or (c) Contractor's violation of any applicable law, rule or regulation. Contractor shall further indemnify, save harmless and defend Contractor from defend Customer from any Claims arising from or related to employment status or employment related benefits (including, but not limited to, overtime, worker's compensation, unemployment, state wage and hour, minimum wage) which Claims are made by Contractor's employees.

*Id.* at 5. Section 4.2 of the TMA, entitled "Notice" further provides that:

In addition to the provisions set forth above, If any Indemnified Party receives notice of assertion or commencement of any claim, demand, or action made or brought by an person not a Party to this Agreement against such indemnified party with respect to which an Indemnitor is obligated to provide indemnification hereunder (a "Third Party Claim"), the Indemnified Party will give such Indemnitor reasonably prompt written notice thereof, but in any event not later than ten (10) calendar days after receipt of notice of such Third Party Claim.  The Indemnitor will have the right to participate in, or, by giving written notice to the Indemnified Party, to assume, the defense of any Third-Party Claim at such Indemnitor's own expense and by such Indemnitor's own counsel., and the Indemnified Party will cooperate in good faith in the defense.

*Id.*

In addition, Section 4.3 of the TMA, entitled "Expiration" provides that:

Failure by an Indemnified Party to tender any claim, demand, action or liability within the time frames set forth shall be an absolute waiver of the Indemnitor's indemnification obligation hereunder.

*Id.*  Lastly, Section 31 of the TMA, which is entitled "Governing Law; Venue," provides that:

This Agreement shall be deemed to have been drawn in accordance with the statutes and laws of Indiana.  In the event of any disagreement or dispute, the laws of Indiana shall apply.  All such disagreements or disputes shall be submitted to the court of proper jurisdiction in the state of Indiana and the Parties hereby agree to the exclusive jurisdiction of the courts located in the State of Indiana, and further waives any defenses or challenges to the venue or jurisdiction in or of such courts.  Notwithstanding the foregoing, the Parties may mutually agree in writing to submit any such disagreement or dispute to binding arbitration and may likewise agree to meet for the purpose of mutually resolving any such disagreements or disputes.

*Id.* at 10.

<u>ADG's Allegations Against McWilliams Collective</u>

In the ADG Complaint, ADG asserts claims for breach of contract, conversion, declaratory relief, and unlawful brokerage activity against McWilliams Collective, related to the shipment of the Replacement Gloves.  *See generally* ECF No. 15 (23-cv-1253).  In this regard, ADG alleges that, in January 2022, it "contracted [with McWilliams] Collective, partially oral and partially in writing, to arrange the ocean transportation, customs brokerage, domestic transloading, and interstate trucking of the Replacement [Gloves] to ADG's warehouse in Kansas City, Missouri."  *Id.* ¶ 17.  ADG also alleges that McWilliams Collective "arranged for

unknown ocean common carriers, warehouses, and motor carriers to provide services to the Replacement [Gloves]," and "arranged for a customs broker to file the customs entries of the Replacement [Gloves] in such a way that [McWilliams] Collective represented to [U.S. Customs and Border Protection] that Collective was the importer of record." *Id.* ¶¶ 18-19.

In addition, ADG alleges that McWilliams Collective "denied ADG access to the ocean common carriers, warehouses, and motor carriers used to arrange the ocean transportation, customs brokerage, domestic transloading, and interstate trucking of 173 containers" of the Replacement Gloves to ADG's warehouse in Kansas City, Missouri. *Id.* ¶ 20. And so, ADG contends that that McWilliams Collective "has prevented the delivery of the Containers to ADG's warehouse in Kansas City, Missouri." *Id.* ¶ 21. Lastly, ADG contends that McWilliams Collective's denial of access to, and non-delivery of, the Replacement Gloves caused it damages, including the accrual of storage and demurrage charges. *Id.* ¶ 22-23, 35. And so, ADG also seeks to recover monetary damages from McWilliams Collective, declaratory relief, and certain costs and fees. *Id*. at 8-9.

<u>McWilliams Collective's Allegations Against ADG</u>

McWilliams Collective also asserts counterclaims against ADG in this action for breach of contract, express indemnification and declaratory judgment, related to the shipment of the Original Gloves. ECF No. 23 ¶¶ 62-84. In this regard, McWilliams Collective alleges that ADG agreed to indemnify it "from and against any and all direct and indirect claims, loss, damage, injury, demands, expenses, liabilities, fines, penalties, judgments, and other obligations to the extent directly and proximately caused by or arising from[:]" ADG's (1) "negligence or other wrongful acts[;]" (2) "breach of the TMA[;]" or (3) "violation of any applicable law, rule, or regulation," pursuant to Section 4.1.1 of the TMA. *Id.* ¶ 64.

McWilliams Collective also alleges that ADG failed to comply with applicable laws when it contracted with the "[g]love producer who engaged in the probable use of forced labor in manufacturing the [Original] Gloves," in violation of the parties' contract. *Id.* ¶ 65. In this regard, McWilliams Collective alleges that ADG was required to comply with all applicable laws and regulations under the terms of TMA, and that ADG breached the TMA by failing to comply with these applicable laws, by contracting with a glove producer who "engaged in the probable use of forced labor in manufacturing the gloves." *Id.* ¶¶ 68-69. Lastly, McWilliams Collective

alleges that ADG's breach of the TMA proximately caused the detention of the Original Gloves, thereby causing damages to McWilliams Collective. *Id.* ¶¶ 70-71. And so, McWilliams Collective seeks to recover monetary damages from ADG, a declaratory judgment, costs and attorney's fees. *Id.* ¶ 85.

**B.       Relevant Procedural Background**

On July 20, 2022, ADG filed a third-party complaint against McWilliams Collective, pursuant to Fed. R. of Civ. P. 14(a) and (c), in the District of Maryland. ECF No. 10. On July 22, 2022, ADG filed a complaint against McWilliams Collective and Eric L. McWilliams in the Central District of California. ECF No. 15 (23-cv-1253).

On July 26, 2022, McWilliams Collective was successfully served with ADG's third-party complaint. ECF No. 17. On September 15, 2022, McWilliams Collective answered ADG's third-party complaint and filed counterclaims against ADG. ECF No. 23.

On May 11, 2023, the Central District of California: (1) granted a motion to transfer venue to the District of Maryland, pursuant to 28 U.S.C. § 1404(a); (2) denied McWilliams Collective's pending motion to dismiss ADG's complaint without prejudice; and (3) transferred the ADG Complaint to the District of Maryland. ECF No. 40 (23-cv-1253). The case was transferred to this Court on May 12, 2023. ECF No. 41 (23-cv-1253). And so, on May 30, 2023, the Court consolidated civil action Nos. 23-cv-1253 and 22-cv-1313. ECF No. 50.

On June 16, 2023, ADG filed a motion to dismiss McWilliams Collective's counterclaims, pursuant to Fed. R. Civ. P. 12(b)(6), and a memorandum in support thereof. ECF No. 52. On June 16, 2023, McWilliams Collective filed a renewed motion to dismiss the ADG Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), and a memorandum in support thereof. ECF No. 53.

On July 7, 2023, McWilliams Collective filed a response in opposition to ADG's motion to dismiss. ECF No. 57. On July 7, 2023, ADG also filed a response in opposition to McWilliams Collective's motion to dismiss. ECF No. 58. On July 21, 2023, and July 24, 2023, ADG and McWilliams Collective filed their respective reply briefs. ECF Nos. 60 and 62.

These motions having been fully briefed, the Court resolves the pending motions.

### III.    LEGAL STANDARDS

#### A.    Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When evaluating the sufficiency of a plaintiff's claims under Rule 12(b)(6), the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted). But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet*, 591 F.3d at 255. And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II, L.P. v. Parker,* 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989)).

#### B.    Fed. R. Civ. P. 15

Rule 15 provides that, when a party cannot amend a pleading by right, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The decision of whether to grant or deny leave to amend is within the discretion of the Court, and the Court "should freely" grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). But, the Court should deny a party leave to amend "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman*, 371 U.S. at 182). In this regard, an amendment is futile "when the proposed amended complaint fails to state a claim." *Van Leer v. Bank Securities, Inc.*, 479 Fed. App'x 475, 479 (4th Cir. 2012). And so, the Court should deny a motion for leave to amend if "the proposed

amendments could not withstand a motion to dismiss." *Cuffee v. Verizon Commc'ns, Inc.*, 755 F. Supp. 2d 672, 677 (D. Md. 2010) (citation omitted).

### C.     Choice Of Law

When a case is transferred to the District of Maryland pursuant to 28 U.S.C. § 1404(a), this Court applies state law as if it were sitting in the transferor state, but, as to matters of federal law, the Court applies federal law. *Belmora LLC v. Bayer Consumer Care AG*, 987 F.3d 284, 292 (4th Cir.) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 639-640 (1964)). And so, the Court applies the choice-of-law rules of the transferor state to resolve choice of law issues. Relevant here, under California's choice-of-law rules, the Court needs to "consider the place at which the parties made the contract, the place at which their negotiations took place, the place of the contract's performance, the location of the contract's subject matter and . . . the residence, place of incorporation and place of business of the parties," to determine the applicable state law when a conflict exists between California and Maryland law. *ABF Cap. Corp. v. Berglass*, 130 Cal. App. 4th 825, 838 (2005) (citing Restatement (Second) of Conflict of L. § 188 (Am. Law. Inst. 1977)).

### D.     Breach Of Contract Claims

In Maryland, the elements for a breach of contract claim include "a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation." *Swedish Civ. Aviation Admin. v. Project Mgmt. Enter., Inc.*, 190 F. Supp. 2d 785, 791 (D. Md. 2002). And so, a plaintiff must plead that there existed a "contractual obligation, breach, and damages" to state a plausible breach of contract claim. *Class Produce Grp., LLC v. Harleysville Worcester Ins. Co.*, 2018 WL 1471682, at *17 (D. Md. Mar. 23, 2018) (citations omitted). Similarly, under California law, a plaintiff must allege (1) the terms of the contract, (2) the obligations of the parties under the contract, and (3) at what point the defendant's breach occurred, to state a breach of contract claim. *See McGrew v. Countrywide Home Loans, Inc.*, 2009 WL 10672902, at *2 (S.D. Cal. July 28, 2009). Lastly, to state a breach of contract claim under Indiana law, "a plaintiff must [also] prove that: (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach." *Cornell v. Help at Home, LLC*, 2021 WL 1839578, at *3 (N.D. Ind. May 7, 2021) (quoting *Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007)).

10

### E.    Indemnification Claims

The United States Court of Appeals for the Fourth Circuit has held that an indemnification claim is barred as a matter of law, where the claim for indemnification is not brought in accordance with a contract's notice provision.  *See Burris Chem., Inc. v. USX Corp.*, 10 F.3d 243, 246 (4th Cir. 1993) (holding that a "claim for indemnification under the agreement is barred as a matter of law because of [the] violation of the 60-day notice provision of . . . . the [contract].")  Relevant here, indemnification claims are barred under Indiana law where the parties to a contract have failed to comply with unambiguous notice obligations in the contract. *Denney v. Amphenol Corp.*, 2023 WL 2495867, at *3-4 (S.D. Ind. Feb. 17, 2023) (dismissing an indemnification cross-claim under Indiana law for failing to provide written notice within five years as required under the contract).

### F.    Conversion And Declaratory Relief Claims

Under Maryland law, the intentional tort of conversion involves  "any distinct act of ownership exerted by one person over the personal property of another in denial of his right or inconsistent with it" and carried out with "an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights."  *Neal v. Pentagon Fed. Credit Union*, 2018 WL 5786119, at *19 (D. Md. Nov. 5, 2018) (internal quotations omitted). Similarly, to state a claim for conversion under California law, a plaintiff must allege "(1) ownership or right to possession of the property; (2) wrongful disposition of the property right; and (3) damages."  *Beluca Ventures LLC v. Aktiebolag*, 622 F. Supp. 3d 806, 814 (N.D. Cal. 2022) (internal citation omitted).  And so, to state a claim for conversion under either Maryland or California law, a plaintiff must sufficiently allege facts in the complaint to show: (1) its ownership or right to possession of property and (2) the defendant's wrongful disposition or control of the property.

In addition, this Court has held that declaratory relief is "a mode of relief, and is not an independent cause of action."  *NAACP v. U.S. Dep't of Homeland Sec.*, 364 F. Supp. 3d 568, 573 (D. Md. 2019).  Similarly, under California law, declaratory relief is not an independent cause of action.  *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010) ("However, without reaching the merits of Defendants' argument, the Court notes that declaratory and injunctive relief are not causes of action; rather, they are remedies.")  This Court

has also held that "[w]hen declaratory relief would be duplicative of claims already alleged, dismissal is warranted." *Chevron U.S.A. Inc. v. Apex Oil Co.,* 113 F. Supp. 3d 807, 824 (D. Md. 2015) (quoting *Sharma v. OneWest Bank,* 2011 WL 5167762, at *6 (D. Md. Oct. 28, 2011)); *see also McMillan v. Kan. City Life Ins. Co.*, 2023 WL 2499746, at *20 (D. Md. Mar. 14, 2023).

### G.   Unlawful Brokerage Activity

Lastly, title 49, United States Code, section 14916 governs interstate brokerage activities. In this regard, Section 14916(a) provides that a person may provide interstate brokerage services as a broker only if that person: (1) "is registered under, and in compliance with, section 13904"; and (2) "has satisfied the financial security requirements under section 13906." 49 U.S.C. § 14916(a). Section 14916(c) provides that: "[a]ny person who knowingly authorizes, consents to, or permits, directly or indirectly, either alone or in conjunction with any other person, a violation of [49 U.S.C. § 14916(a)] is liable … to the injured party for all valid claims incurred without regard to amount." 49 U.S.C. § 14916(c), (c)(2). In addition, under 49 U.S.C. § 14916(d), liability for unauthorized brokering flows "jointly and severally (1) to any corporate entity or partnership involved; and (2) to the individual officers, directors, and principals of such entities." *Id.* § 14916(d).

## IV.   LEGAL ANALYSIS

ADG and McWilliams Collective have both filed motions to dismiss the others' claims and counterclaims in this matter.

First, McWilliams Collective has moved to dismiss the claims asserted against it in the ADG Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), upon the grounds that: (1) the ADG Complaint lacks sufficient factual allegations to show the parties' contractual obligations regarding the shipment of the Replacement Gloves, and how McWilliams Collective failed to perform its contractual obligations; (2) the ADG Complaint also lacks sufficient factual allegations to establish the required elements of a conversion claim; (3) ADG fails to allege facts to show it is an injured person under 49 U.S.C. § 14916, to support its unlawful brokerage activity claim; and (4) ADG's declaratory relief claim fails as a matter of law, because ADG cannot bring an independent cause of action for declaratory relief and this claim is duplicative of ADG's breach of contract and conversion claims. *See generally* ECF No. 52. And so, McWilliams Collective requests that the Court dismiss the ADG Complaint. *Id.* at 13.

ADG counters that the Court should not dismiss its claims, because: (1) the ADG Complaint contains sufficient factual allegations to establish the elements for a breach of contract claim under California law; (2) the ADG Complaint also contains sufficient factual allegations to establish the elements of conversion claim under California law; (3) the ADG Complaint states a plausible unlawful brokerage claim; and (4) the ADG Complaint states a plausible claim for declaratory relief, because the declaratory relief that ADG seeks is to clarify the parties' rights under their contract. *See generally* ECF No. 58. And so, ADG requests that the Court deny McWilliams Collective's motion to dismiss. *Id.* at 24.

Second, ADG has moved to dismiss McWilliams Collective's counterclaims against it, pursuant to Fed. R. Civ. P.12(b)(6), upon the grounds that: (1) McWilliams Collective fails to state a plausible claim for breach of contract under Indiana law; (2) McWilliams Collective has waived its right to assert an indemnification claim against ADG under the TMA and McWilliams Collective is not entitled to indemnification; and (3) McWilliams Collective's declaratory judgment counterclaim fails as a matter of law, because declaratory relief not an independent cause of action and this claim is duplicative of McWilliams Collective's breach of contract claim. *See generally* ECF No. 53. And so, ADG requests that the Court dismiss McWilliams Collective's counterclaims. *Id.* at 15.

McWilliams Collective counters that the Court should not dismiss its counterclaim against ADG, because: (1) the counterclaim states a plausible breach of contract counterclaim against ADG, based upon Section 1.3 of the TMA; (2) the counterclaim contains sufficient factual allegations to support each element of its express indemnification counterclaim under Sections 4.1.1 and 4.2 of the TMA; and (3) the counterclaim appropriately seeks a "declaration of the respective rights and obligations" of ADG and McWilliams related to the Original Gloves. *See generally* ECF No. 58. And so, McWilliams Collective requests that the Court deny ADG's motion to dismiss. *Id*. at 17.

For the reasons that follow, Maryland law applies to the state law claims asserted in the ADG Complaint. A careful reading of the ADG Complaint also shows that ADG fails to state a plausible breach of contract claim against McWilliams Collective under Maryland law, because the ADG Complaint lacks sufficient factual allegations to show either a contractual obligation, or breach of that obligation, on the part of McWilliams Collective. The Court must also dismiss ADG's claim for declaratory relief, because declaratory relief is not an independent cause of

action under Maryland law.  But, a careful reading of the ADG Complaint makes clear that ADG states plausible claims for conversion and unlawful brokerage activity.  And so, the Court also: (1) GRANTS-in-PART and DENIES-in-PART McWilliams Collective's motion to dismiss; (2) DISMISSES ADG's breach of contract claim WITHOUT PREJUDICE; and (3) DISMISSES ADG's declaratory relief claim.

In addition, a careful reading of McWilliams Collective's counterclaim shows that McWilliams Collective's counterclaim fails to identify the applicable laws that McWilliams Collective alleges ADG violated in breach of the TMA, or to show how ADG violated such laws. McWilliams Collective's counterclaim for declaratory judgment also fails as matter of law, because declaratory judgment is not an independent cause of action and this counterclaim is duplicative of McWilliams Collective's breach of contract counterclaim.  McWilliams Collective similarly fails to state a plausible express indemnification counterclaim against ADG, because it has waived this counterclaim under the plain terms of the TMA.  And so, the Court also: (1) GRANTS ADG's motion to dismiss; (2) DISMISSES McWilliams Collective's breach of contract counterclaim WITHOUT PREJUDICE; (3) DISMISSES McWilliams Collective's express indemnification counterclaim; and (4) DISMISSES McWilliams Collective's declaratory relief counterclaim.

### A.  The Court Grants-in-Part And Denies-in-Part McWilliams Collective's Motion

The Court first addresses McWilliams Collective's motion to dismiss the ADG Complaint.  For the reasons that follow, the Court GRANTS-IN-PART and DENIES-IN-PART this motion.

#### 1.  Maryland Law Applies To ADG's State Law Claims

As a threshold matter, the Court must first determine the state law that applies to ADG's state law claims against McWilliams Collective, because the ADG Complaint originated in the Central District of California and the complaint was later transferred to this Court pursuant to 28 U.S.C. § 1404(a).  Under such circumstances, this Court applies state law as if it were sitting in California.  *See Belmora LLC v. Bayer Consumer Care AG*, 987 F.3d 284, 292 (4th Cir.) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 639-640 (1964)) (holding that when a case is transferred

pursuant to 28 U.S.C. § 1404(a), the transferee court applies state law as if it were sitting in the transferor state, but, as to matters of federal law, applies federal law of the Fourth Circuit).

To the extent that a conflict exists under California law, the Court, following California law, "consider[s] the place at which the parties made the contract, the place at which their negotiations took place, the place of the contract's performance, the location of the contract's subject matter and . . . the residence, place of incorporation and place of business of the parties," to determine the applicable substantive law. *ABF Cap. Corp. v. Berglass*, 130 Cal. App. 4th 825, 838 (2005) (citing Restatement (Second) of Conflict of L. § 188 (Am. Law. Inst. 1977)). In this case, the Court observes that it is undisputed that the places where the parties negotiated the alleged agreement related to the shipment of the Replacement Gloves are Maryland and Florida. *See* ECF No. 40 (23-cv-1253) at 4. It is also undisputed in this case that ADG's principal place of business is located in Maryland. ECF No. 15 ¶ 1 (23-cv-1253). Given these undisputed facts, McWilliams persuasively argues that Maryland law should apply to ADGs state law claims, because the parties negotiated the alleged contract in the State of Maryland and ADG also resides in this State.[3] And so, the Court will apply Maryland law to ADG's state law claims.

### 2. ADG Fails To State A Breach Of Contract Claim

Having determined that Maryland law applies to ADG's state law claims, a careful reading of the ADG Complaint shows that ADG fails to plausibly allege a breach of contract claim under Maryland law. Under Maryland law, "a complaint for breach of contract must allege facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation." *Swedish Civ. Aviation Admin. v. Project Mgmt. Enter., Inc.*, 190 F. Supp. 2d

---

[3] The Court observes that the choice-of-law determination in this case does not substantively impact the Court's analysis of ADG's claims, because Maryland and California law are essentially identical in all material respects with regards to the state law claims asserted by ADG. *See Swedish Civil Aviation Admin. v. Project Mgmt. Enter., Inc.*, 190 F. Supp. 2d 785, 791 (D. Md. 2002); *McGrew v. Countrywide Home Loans, Inc.*, 2009 WL 10672902, at *2 (S.D. Cal. July 28, 2009); *Neal v. Pentagon Fed. Credit Union*, 2018 WL 5786119, at *19 (D. Md. Nov. 5, 2018); *Beluca Ventures LLC v. Aktiebolag*, 622 F. Supp. 3d 806, 814 (N.D. Cal. 2022); *NAACP v. U.S. Dep't of Homeland Sec.*, 364 F. Supp. 3d 568, 573 (D. Md. 2019); *Profiles, Inc. v. Bank of Am. Corp.*, 453 F. Supp. 3d 742, 752 (D. Md. 2020); *McMillan v. Kan. City Life Ins. Co.*, 2023 WL 2499746, at *20 (D. Md. Mar. 14, 2023); *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010). Given this, the Court's choice-of-law determination is not dispositive of ADG's claims.

785, 791 (D. Md. 2002).  And so, ADG must allege facts to show a contractual obligation and a breach on the part of McWilliams Collective, to state a breach of contract claim here.

In this case, the ADG Complaint makes clear that ADG fails to sufficiently allege facts to show either a contractual obligation, or breach of that obligation, on the part of McWilliams Collective to support its breach of contract claim.  Notably, ADG alleges that it entered into a contract with McWilliams Collective that was "partially oral and partially in writing," regarding the shipment of the Replacement Gloves, pursuant to which McWilliams Collective "undertook duties to arrange the ocean transportation, customs brokerage, domestic transloading, and interstate trucking of the Containers to ADG's warehouse in Kansas City, Missouri, so that ADG, as the buyer and owner of the [Replacement Gloves], could receive and resell them."  ECF No. 15 (23-cv-1253) ¶¶ 17, 25.  But, the ADG Complaint is devoid of any facts to show the specific terms that ADG and McWilliams agreed to under this alleged contract, or how and when this partially oral and partially written contract was formed.

In fact, there are no factual allegations in the ADG Complaint to show when the partially oral and partially written contract was formed, or to identify the oral and written statements that comprise the purported contract.  *See generally* ECF No. 15 (23-cv-1253).  The ADG Complaint is similarly devoid of facts to show the parties' respective contractual obligations under the contract, or to show how McWilliams Collective allegedly failed to perform its obligations under the contract.  *Id.*

While ADG does allege that McWilliams Collective "arranged for unknown ocean common carriers, warehouses, and motor carriers to provide services" related to the shipment of the Replacement Gloves, ECF No. 15 [23-cv-1253] ¶ 18, the ADG Complaint does not allege that McWilliams Collective had a contractual obligation to identify these third-party service providers.  *See generally* ECF No. 15 (23-cv-1253).  Nor does the ADG Complaint explain how McWilliams Collective breached the contract with regards to its responsibilities as "the importer of record."  *Id.*  There are similarly no factual allegations in the ADG Complaint to explain how McWilliams Collective "denied ADG access" to the ocean common carriers, warehouses, and motor carriers used for the transportation management services, in alleged violation of the parties' contract.  ECF No. 15 (23-cv-1253) ¶ 20.

The absence of these critical facts renders ADG' breach of contract claim implausible. And so, the Court must DISMISS this claim.[4]

ADG has requested leave to amend its complaint, should the Court find its claims to be legally deficient.  ECF No. 58 at 23-24.  And so, the Court will dismiss ADG's breach of contract claim WITHOUT PREJUDICE, because ADG may be able to fill the factual gaps in its complaint to address the concerns discussed above.

### 3.  ADG Fails To State A Claim For Declaratory Relief

The Court must also dismiss ADG's claim for declaratory relief, because declaratory relief is not an independent cause of action under Maryland law.  *NAACP v. U.S. Dep't of Homeland Sec.*, 364 F. Supp. 3d 568, 573 (D. Md. 2019) (holding that declaratory relief is "a mode of relief, and is not an independent cause of action" and dismissing count for declaratory relief).[5]  In the ADG Complaint, ADG asserts a separate cause of action for declaratory relief. ECF No. 15 (23-cv-1253) ¶¶ 36-37.  Because ADG may not pursue the remedy of declaratory relief as an independent cause of action, the Court must dismiss this claim.  *NAACP*, 364 F. Supp. at 573.

A careful reading of the ADG Complaint also makes clear that the declaratory relief that ADG seeks is duplicative of its breach of contract claim.  ADG seeks a declaration that McWilliams Collective must comply with the parties' contract terms.  ECF No. 15 (23-cv-1253) ¶ 37.  This relief is duplicative of the breach of contract claim in the ADG Complaint and dismissal of this claim is also appropriate for this independent reason.  *Chevron U.S.A. Inc. v. Apex Oil Co.,* 113 F. Supp. 3d 807, 824 (D. Md. 2015) (quoting *Sharma v. OneWest Bank*, 2011 WL 5167762, at *6 (D. Md. Oct. 28, 2011); *McMillan v. Kan. City Life Ins. Co.*, 2023 WL 2499746, at *20 (D. Md. Mar. 14, 2023).  For these two reasons, the Court must DISMISS

---

[4] The Court would reach the same conclusion when applying California state law, because ADG must also allege the terms of the contract, the obligations of the parties under the contract, and at what point the defendant's breach occurred, to state a breach of contract claim under California law.  *See McGrew v. Countrywide Home Loans, Inc.*, No. 08–cv–1831–DMS, 2009 WL 10672902, at *2 (S.D. Cal. July 28, 2009).

[5] The Court would reach the same conclusion when applying California state law, because declaratory relief is not an independent cause of action.  *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010) ("However, without reaching the merits of Defendants' argument, the Court notes that declaratory and injunctive relief are not causes of action; rather, they are remedies.").

ADG's claim for declaratory relief.

### 3. ADG States Plausible Claims For Conversion And Unlawful Brokerage Activity

McWilliams Collective's arguments that the Court should dismiss ADG's conversion and unlawful brokerage activity claims are more problematic.

First, the Court is satisfied that ADG states a plausible claim for conversion under Maryland law in the ADG Complaint. Under Maryland law, conversion is an intentional tort that involves "any distinct act of ownership exerted by one person over the personal property of another in denial of his right or inconsistent with it," and carried out with "an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." *Neal v. Pentagon Fed. Credit Union*, 2018 WL 5786119, at *19 (D. Md. Nov. 5, 2018) (internal quotations omitted).[6] And so, to state a claim for conversion, ADG must sufficiently allege facts to show: (1) its ownership or right to possession of property and (2) McWilliams Collective's wrongful disposition or control of the property.

Here, a careful reading of the ADG Complaint makes clear that ADG alleges facts to show that it has an ownership interest in the Replacement Gloves. *See* ECF No. 15 (23-cv-1253) ¶¶ 4, 12, 30. ADG also alleges facts in the ADG Complaint to show McWilliams Collective's wrongful disposition or control of the Replacement Gloves. *Id*. at ¶¶ 19-21, 31-32 (alleging that McWilliams Collective "intentionally [took] possession of ADG's Replacement [Gloves] and prevented ADG from having access to [them]," claimed to be the importer of record, prevented delivery of the Replacement [Gloves] to ADG's warehouse, and "denied ADG access to [the Replacement Gloves]" which establishes McWilliams' Collective's wrongful disposition or control of the Replacement Gloves). ADG also clearly alleges that it suffered damages because of McWilliams Collective's conversion of the Replacement Gloves. *Id*. at ¶ 35 (alleging that "[b]ecause of the above, to date ADG has sustained damages of not less than $456,520, plus miscellaneous expenses, interest, and costs, no part of which has been paid by Collective despite ADG's demands for payment.") And so, taken as true, ADG's factual allegations state a

---

[6] California law similarly provides that, to state a claim for conversion, a plaintiff must allege "(1) ownership or right to possession of the property; (2) wrongful disposition of the property right; and (3) damages," to allege conversion. *Beluca Ventures LLC v. Aktiebolag*, 622 F. Supp. 3d 806, 814 (N.D. Cal. 2022).

plausible claim for conversion.[7]  *Neal*, 2018 WL 5786119, at *19; *Beluca Ventures LLC*, 622 F. Supp. 3d at 814.

ADG also states a plausible unlawful brokerage activity claim under Section 14916 in the ADG Complaint.  Pursuant to 49 U.S.C. § 14916, a person who violates this unlawful brokerage activity statute is liable "to the injured party for all valid claims incurred without regard to amount." 49 U.S.C. § 14916 at §§ 14916(a), 14916(c).  McWilliams Collective argues in its motion to dismiss that ADG cannot state a claim under Section 14916, because it has not alleged facts to show that it is an injured party under that statute.  ECF No. 52-1 at 17-19.  But, this argument is belied by the allegations contained in the ADG Complaint.

Notably, ADG alleges in the ADG Complaint that: (1) "McWilliams Collective and Eric McWilliams knowingly engaged in unlawful brokerage activity because they provided interstate brokerage services to ADG in connection with the Original [Gloves] and the Replacement [Gloves][;]" (2) on its information and belief, "neither McWilliams Collective nor Mr. McWilliams were registered as brokers with the Secretary of Transportation nor satisfied the financial security requirements to serve as a broker[;]" and (3) "it has been injured by this alleged conduct, through the accrual of . . . storage and demurrage charges that would not have been incurred had defendants been properly licensed brokers with the requisite training and experience and financial security to protect against losses."  ECF No. 15 (23-cv-1253) ¶¶ 39-42.  Taking these allegations as true, ADG has sufficiently alleged facts to show that it is an "injured party" under Section 14916, because ADG alleges that McWilliams Collective engaged in unlawful brokerage activity and that ADG was injured by this conduct through the accrual of certain storage and demurrage charges.

The Court also does not read Section 14916 to limit the injury covered by this law to only tortious conduct, as ADG suggests.  *See* ECF No. 52-1 at 17-19.  Given this, the Court also declines to dismiss ADG's unlawful brokerage claim.

---

[7] McWilliams Collective's argument that ADG's conversion claim improperly re-packages its breach of contract claim as a tort claim (ECF No. 52-1 at 14-15) is also not persuasive, because ADG alleges that it purchased the Replacement Gloves in separate transaction with an overseas seller.  ECF No. 15 (23-cv-1253) at ¶ 4, 16.

**B.  The Court Grants ADG's Motion**

Turning to ADG's motion to dismiss, the Court GRANTS this motion for the reasons set forth below.

### 1.  Indiana Law Applies To McWilliams Collective's Breach Of Contract And Indemnification Claims

As an initial matter, the Court must again first determine the state law that applies to McWilliams Collective's breach of contract and indemnification counterclaims against ADG. The parties agree that these claims arise under the TMA and that the TMA addresses the law that governs such claims.  *See* ECF No. 23 at ¶¶ 62-64; 73; ECF No. 53-1 at 5, 7, 8; ECF No. 57 at 6, 8.  And so, the Court looks to the relevant language in that agreement regarding the parties' choice of law.

In this regard, Section 31 of the TMA provides, in relevant part, that:

> This Agreement shall be deemed to have been drawn in accordance with the statutes and laws of Indiana.  In the event of any disagreement or dispute, the laws of Indiana shall apply.

And so, the Court reads the plain text of the TMA to require that Indiana law applies to McWilliams Collective's breach of contract and indemnification counterclaims, which arise from a dispute under the TMA.

### 2.  McWilliams Collective Fails To State A Breach Of Contract Claim

ADG persuasively argues that McWilliams Collective fails to state a plausible breach of contract counterclaim under Indiana law.  To state a breach of contract claim under Indiana law, McWilliams Collective "must allege that: (1) a contract existed, (2) [ADG] breached the contract, and (3) [it] suffered damage as a result of the defendant's breach."  *Cornell v. Help at Home, LLC*, 2021 WL 1839578, at *3 (N.D. Ind. May 7, 2021) (quoting *Collins v. McKinney*, 871 N.E. 2d 363, 370 (Ind. Ct. App. 2007)).  The Court agrees with ADG that McWilliams Collective fails to allege sufficient facts to show how ADG breached the TMA to satisfy this requirement.

McWilliams Collective alleges in its counterclaim that ADG "breached the TMA when it failed to comply with applicable laws when it contracted with the . . . glove producer who used forced labor in manufacturing the gloves."  ECF No. 23 ¶ 69.  But, as ADG correctly observes, McWilliams Collective fails to identify the applicable laws that ADG purportedly violated.  *See*

ECF No. 23 ¶¶ 62-71.  McWilliams Collective also fails to allege facts to show how ADG violated these unidentified laws in connection with the TMA.  *Id*.

Given this, the facts alleged by McWilliams Collective, taken as true, are simply not sufficient to state a plausible breach of contract claim.  And so, the Court must DISMISS this counterclaim.  Fed. R. Civ. P. 12(b)(6).

Like ADG, McWilliams Collective requests that the Court allow it to amend this counterclaim, should the Court find the counterclaim to be legally deficient.  ECF No. 57 at 16-17.  And so, also like ADG, the Court will dismiss this breach of contract counterclaim WITHOUT PREJUDICE, because McWilliams Collective may be able to fill the gaps in its counterclaim with additional facts to address the concerns identified by the Court.[8]

### 3.  McWilliams Collective Also Fails To State An Indemnification Claim

The Court must also dismiss McWilliams Collective's express indemnification claim, because there is no genuine dispute in this case that McWilliams Collective failed to satisfy the notice requirements under the TMA before bringing this claim.  Under Indiana law, indemnification claims are barred where parties have failed to comply with unambiguous notice obligations in their contract.  *Denney v. Amphenol Corp.*, 2023 WL 2495867, at *3-4 (S.D. Ind. Feb. 17, 2023) (dismissing an indemnification cross-claim under Indiana law for failing to provide written notice within five years as required under the contract).  And so, McWilliams Collective cannot pursue its express indemnification counterclaim here, if it did not provide ADG with advance written notice regarding this claim, as required under the TMA.

Relevant here, Section 4.2 of the TMA provides that "if any Indemnified Party receives notice of assertion or commencement of any claim, demand or action made or brought by any person or party not a Party to this Agreement against such Indemnified Party with respect to which an Indemnitor is obligated provide indemnification hereunder (a 'Third Party Claim'), the Indemnified Party will give such Indemnitor reasonably prompt written notice thereof, but in any event, not later than ten (10) calendar days after receipt of such notice of such Third Party

---

[8] In its response in opposition to ADG's motion to dismiss, McWilliams Collective states that it "may include, on amendment, that ADG has clearly violated Section 1307 of the Tariff Act (19 U.S.C. § 1307), which prohibits importing any product that was produced or manufactured, in whole or in part, by forced labor."  ECF No. 57 at 12.  ADG argues, however, that Section 1307 cannot serve as the basis for McWilliams Collective's breach of contract counterclaim.  ECF No. 60 at 12.

Claim." TMA § 4.2, ECF No. 53-2 at 4. And so, under the plain terms of the TMA, McWilliams Collective is required to give ADG written notice of its express indemnification claim within 10 calendar days of receipt of its own notice of a third-party claim.

ADG persuasively argues that McWilliams Collective had knowledge of FTN's third-party claim against it on July 26, 2022, when ADG served its third-party complaint on McWilliams Collective. ECF No. 53-1 at 12; *see* ECF No. 17. Given this, McWilliams Collective had 10 calendar days from that date to provide written notice to ADG of its express indemnification claim. But McWilliams Collective filed its express indemnification counterclaim on September 15, 2022, well beyond this 10-calendar day period. ECF No. 23.

Given this, the Court agrees with ADG that McWilliams Collective's express indemnification claim is waived. ECF No. 57 at 10-13. And so, the Court must also DISMISS this counterclaim.

### 4. McWilliams Collective Fails To State A Claim For Declaratory Judgment

As a final matter, the Court must similarly dismiss McWilliams Collective's counterclaim for declaratory judgment, because such relief is not an independent cause of action and McWilliams Collective's requested declaratory relief is also duplicative of its breach of contract claim. As discussed above, declaratory relief is not an independent cause of action. *NAACP*, 364 F. Supp. 3d at 573; *see also Profiles*, 453 F. Supp. 3d at 752. Here, McWilliams Collective improperly asserts a separate counterclaim for declaratory judgment, seeking declaratory relief. ECF No. 23 at ¶ 83-84 (alleging that McWilliams Collective is entitled to a declaration of the respective rights and obligations of ADG and McWilliams in connection with the 202 detained containers and that McWilliams Collective also seeks a declaration that it is excused from performance based on ADG's breach of the TMA). McWilliams Collective's counterclaim also makes clear that the requested declaratory relief is duplicative of its other counterclaims, making dismissal of this claim appropriate for a second reason. *Chevron,* 113 F. Supp. 3d at 824; *see also McMillan*, 2023 WL 2499746, at *20; ECF No. 23 at ¶ 85(a) (requesting that the Court "[d]eclare ADG *violated Section 1.3 of the TMA* and that McWilliams is excused from performance under the TMA") (emphasis added). And so, the Court must DISMISS McWilliams Collective's counterclaim for declaratory judgment.

## V.     CONCLUSION

In sum, ADG fails to state plausible breach of contract and declaratory relief claims against McWilliams Collective in the ADG Complaint.  But, ADG has stated plausible claims for conversion and unlawful brokerage activity.  In addition, McWilliams Collective fails to state plausible breach of contract, express indemnification, and declaratory judgment counterclaims in this matter.  And so, for the foregoing reasons, the Court:

1. **GRANTS-in-PART** and **DENIES-in-PART** McWilliams Collective's motion to dismiss;

2. **DISMISSES** ADG's breach of contract claim WITHOUT PREJUDICE;

3. **DISMISSES** ADG's declaratory relief claim;

4. **GRANTS** ADG's motion to dismiss;

5. **DISMISSES** McWilliams Collective's breach of contract counterclaim WITHOUT PREJUDICE;

6. **DISMISSES** McWilliams Collective's express indemnification counterclaim; and

7. **DISMISSES** McWilliams Collective's declaratory judgment counterclaim.

A separate Order shall issue.

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge